UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

|  |  |
|---|---|
| ROBERTA BURKE, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CREDIT ONE BANK, N.A. and FIRST CONTACT, LLC,<br><br>Defendants. | Case No. 8:18-CV-00728-EAK-TGW<br>CLASS ACTION |

**DEFENDANT CREDIT ONE BANK, N.A.'S MOTION TO DISMISS/STRIKE AND SUPPORTING MEMORANDUM OF LAW**

Pursuant to Rules 12(b)(6), 12(f), and 23 of the Federal Rules of Civil Procedure, defendant Credit One Bank, N.A. ("Credit One" or "the Bank") hereby moves for an order dismissing/striking the class-wide allegations contained in the Complaint filed by Plaintiff ("Plaintiff"). *See* Compl., ¶¶ 46-62. As another federal court recently held after full discovery on class certification, a class that could only be populated by non-customers called by or on behalf of Credit One is not manageable, ascertainable, or superior, as is required to proceed with a putative class action complaint under Rule 23. Thus, it is clear from the face of the Complaint that in light of such issues, Plaintiff's class allegations are facially deficient and no amount of discovery can save them. *See*

Part III.A.  Further, Credit One moves under Rule 12(b)(1), 12(b)(6), and 12(f) to dismiss or strike Plaintiff's claim for injunctive relief (Compl., ¶ 63 & Prayer for Relief §§ (b) and (c)), and Plaintiff's claim for attorneys' fees and litigation expenses (*id.*, § (h)).  *See* Parts III.B-C.

Finally, and in the alternative to striking class allegations entirely, Credit One moves under Rule 12(b)(2) to dismiss or strike Plaintiff's class allegations brought on a nationwide basis (Compl., ¶¶ 46-62), because this Court lacks personal jurisdiction over the claims of non-Florida residents, in light of new U.S. Supreme Court precedent. *See* Part IV.[1]

## I.    INTRODUCTION

In March 2015, a handful of telephone calls were placed to Plaintiff's telephone number.  *See* Compl., ¶¶ 18-21, 35.  Now Plaintiff seeks to bring Credit One—a Nevada-based national bank with no "home" in Florida—into this Florida court to defend against a putative nationwide class action lawsuit brought on behalf of anyone else like Plaintiff who may have been called in regards to monies owed to the Bank, but who would not be a cardholder bound by Agreement to arbitrate his or her disputes.[2]  *Id.*, ¶ 18.

---

[1] A Declaration of David C. Bouc ("Bouc Decl.") is filed concurrently in support of this Rule 12(b)(2) Motion, to establish facts regarding personal jurisdiction.

[2] Specifically, Plaintiff seeks to certify 5 classes: a First Contact class; a First Contact wrong number class; a Credit One class; a Credit One wrong number class; and a Credit One skip trace and wrong number class.  Id.  Credit One would have prior express consent to call its customers, and so, by definition, each of the 5 proposed classes would consist solely of non-customers, like Plaintiff.  (Furthermore, Credit One's customers are bound to individually arbitrate any disputes.)

But Plaintiff's Complaint vastly overreaches in attempting to bring such classwide claims and in seeking unavailable remedies.  **First**, Plaintiff's class claims against Credit One should be stricken entirely (for Florida and non-Florida residents alike) because Plaintiff cannot meet the requirements of Rule 23 to show that her proposed classes are certifiable.  Indeed, as a Nevada federal court recently held when denying a motion to certify against Credit One the exact same type of TCPA classes asserted here, the proposed classes against Credit One (which <u>must exclude all cardholders</u>, who provided consent) is not certifiable under Rule 23.  *See* Part III.A.  **Second**, the Complaint fails to state a viable claim for injunctive relief given the handful of calls relating to Credit One were placed to Plaintiff more than three years ago and there is only a speculative allegation made that Plaintiff is in danger of receiving additional calls.  *See* Part III.B.  **Third**, the Complaint also fails to state a viable claim supporting the request for attorneys' fees and litigation expenses, given that Plaintiff's sole cause of action is brought under the TCPA, which does not provide for such recovery.  *See* Part III.C.

Finally, even if classwide claims could otherwise be asserted, this Court lacks both general and specific jurisdiction to adjudicate the ***nationwide*** claims brought by Plaintiff. Thus and at the least, the claims against the Bank brought on behalf of non-Florida residents must be dismissed.  *See* Part IV.

## II.    LEGAL STANDARDS

Regarding a Rule 12(b)(6) challenge for failure to state a claim, the Supreme Court has held "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted).

Motions to dismiss or strike class allegations are governed by Rule 23(d)(1)(D) setting forth that "[i]n conducting an action under this rule, the court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly . . . ." and Rule 23(c)(1), requiring courts to determine whether a class action can be maintained "as soon as practicable after the commencement of an action brought as a class action…". *See* Fed.R.Civ.P. 23(c) and 23(d)(1)(D). *See, e.g., Saunders v. BellSouth Advert. & Pub. Corp.*, No. 98-1885-CIV, 1998 WL 1051961, at *2 (S.D. Fla. Nov. 10, 1998) (dismissing class claims when, taking the allegations in the Complaint most favorably to Plaintiff, it was nonetheless clear that individual issues would predominate and that as a matter of law, a class could not be certified). *See also Vandenbrink v. State Farm Mut. Auto. Ins. Co.*, No. 8:12-CV-897-T-30TBM, 2012 WL 3156596, at *3 (M.D. Fla. Aug. 3, 2012) ("It is appropriate to now review the class allegations to determine whether a class may stand. Where the propriety of a class action procedure is plain from the initial pleadings, a district court may rule on this issue prior to the filing of a motion for class certification.")

(citing *MRI Assocs. of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co.*, 755 F.Supp.2d 1205, 1207 (M.D. Fla. 2010)).

When considering a Rule 12(b)(2) jurisdictional challenge, a federal court engages in a two-part inquiry to determine whether it has personal jurisdiction over a non-resident defendant.  First, it determines whether the forum state's long-arm statute authorizes an exercise of personal jurisdiction. *Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 256 (11th Cir. 1996).  Second, it determines whether that exercise comports with the Due Process Clause of the Fourteenth Amendment. *Id.*  To satisfy the Due Process Clause, the defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citations omitted).  Both prongs must be satisfied for the court to have personal jurisdiction over the defendant. *Id.*

## III.   MOTION TO DISMISS OR STRIKE FACIALLY DEFICIENT CLASS CLAIMS AND UNAVAILABLE REMEDIES

### A.   The Complaint Fails As A Matter Of Law To Define A Certifiable Class, And Class Allegations Should Be Dismissed.

Even if Plaintiff's nationwide class allegations and claims are not jurisdictionally defective (which they are—see Part IV below), all of her class allegations as to Credit One must be dismissed or stricken because Plaintiff can never meet the Rule 23(b)(3) predominance, manageability, or superiority requirements for class certification against Credit One for a class of non-customers like herself.  Significantly, the District Court of Nevada (the federal court with general jurisdiction over Credit One) recently resolved

this very issue in favor of Credit One, and, in the culmination of a years-long TCPA class action litigation, denied certification on February 26, 2018, of a putative TCPA class action seeking (like here) to represent non-customers called by or on behalf of the Bank. *See Bridge v. Credit One Fin.,* 294 F. Supp. 3d 1019, *8-18 (D. Nev. 2018) (class certification analysis).

In *Bridge*, the Nevada District Court denied certification of a proposed nationwide class of persons receiving calls alleged to have been placed by Automated Telephone Dialing Systems ("ATDS") and who indicated that a wrong number was being called but who were nonetheless called again.  *See, generally, id.*  The classes for which the *Bridge* Court denied certification are just like two of Plaintiff's proposed classes here involving Credit One:  she proposes to represent classes of persons called without prior consent (which would be non-customers) and/or who were purportedly called after providing notification of a wrong number (also non-customers).  *See* Plaintiff's "Credit One TCPA Class" and her "Wrong Number Subclass" at Compl., ¶ 48.[3]

The *Bridge* court, after allowing full discovery into class certification, found that while there were indeed some common questions at issue, other important questions such as whether dialing systems constitute ATDS systems (given the many vendors placing

[3] Credit One notes that while Plaintiff also asserts two "skip-trace" classes concerning Credit One (*see id.*), apparently based on something she saw on the Internet in March 2018 regarding First Contact's capability to skip-trace numbers (*see* Compl., ¶ 13), there is no allegation in the Complaint (nor could there be) that Plaintiff's own number was skip-traced by Credit One or anyone else back in 2015 when she received her calls.  Thus, there is <u>no basis</u> in the Complaint for presuming that Plaintiff's number was skip-traced, so as to support her desire to represent a class of anyone else in that purported category, and those two "skip-trace" classes must also be stricken/dismissed on that basis, pursuant to Rule 12(b)(6).

calls, and the different dialing systems used over time by vendors) were not common. *Id.*
at *11. And, in looking at the "typicality" question, the Court noted that calls could be
placed to a non-customer for atypical reasons; in the *Bridge* case, the plaintiff had called
into the Bank's telephone systems to check balances from his own cellular phone—
providing his mother's social security number and account number as if he was his
mother—which then tied his cellular number to his mother's account. *Id.* at *12. Thus,
the *Bridge* Court did not find that typicality requirements could be established in the case
before it. *Id.*

But, while the *Bridge* Court articulated various problems with the proposed TCPA
classes, the *Bridge* Court's most significant issues with certification were with the Rule
23(b)(3) requirements. The Nevada District Court found that "individual issues would
predominate, rendering the proposed class unmanageable, and that this cannot be cured
merely by redefining the class." *Id.*, *14.

The Plaintiffs in *Bridge* had defined their proposed class in the certification papers
to attempt to exclude persons whom everyone recognized could not be members (i.e.,
cardholders who gave consent for calls, and who were bound to arbitrate disputes, or
persons who said "wrong number" when it was not really a wrong number at all). *Id.*
The *Bridge* Plaintiffs were trying to create some sort of certifiable class where individual
issues of consent would not predominate. However, in looking at the complicated steps
involved in trying to locate potential non-customer class members, the Court found
"individual issues of consent predominate and render the class action an inferior method
to fairly and efficiently adjudicate that TCPA claims of the proposed members." *Id.*, *15.

For example, the Court recognized from facts developed in discovery that "Credit One's records establish that a 'wrong number' report can be false; that is, a 'wrong number' report in a Credit One record does not, by itself, establish lack of consent." *Id.*, *17.

The *Bridge* Court found, after allowing full class certification discovery, the following:

> This matter is distinguished from those cases in which the calling party used a common method to obtain the numbers of all called parties. At issue was whether, as a part of that method, the calling party obtained consent from all called parties. The relevant circumstances were such that a determination could be made whether all recipients of the calls or texts had consented or had not consented. **The present case, however, arises from Credit One's attempts to make debt collection calls to the phone numbers of its account holders, from whom Credit One had obtained consent to call the account holder at phone numbers provided by the account holder.** Bridge's claim rests upon the premise that Credit One failed to ensure that these debt collection phone calls were only being made to its account holders. Rather, some debt collection calls were made to wrong numbers; that is, the call was actually directed at the phone number of a person who was not an account holder and thus had not consented to receive debt collection calls from Credit One. **In short, Credit One was calling both consenting and non-consenting parties.**

> Bridge argues that "persons who may have consented to receive auto-dialed calls are eliminated from the Class definition," and that "the Class definition is structured to ensure lack-of-consent is an issue common to the Class as a whole...." **The Court disagrees because Bridge has not structured the class to distinguish between account holders and non-account holders.** Bridge recognizes that a call recipient's status as an account holder is relevant to the issue of consent as he attempts to limit the class to account holders. However, limitation is only applied to subscribers of the phone number. As a result, the proposed class distinguishes between subscribers who are account holders and subscribers who are not, and ignores that the latter category includes customary users of a mobile phone number who are account holders (and thus have given consent). . . . As a result, **an individual inquiry will be necessary for each subscriber of a phone number to determine whether there was a customary user of that number and whether the customary user is an account holder**.

> . . . The need for individual inquiry becomes more acute given that Bridge has not sought to certify a class to litigate the issue whether Credit One violated the TCPA

by making one call, or even a limited group of calls, to all class members. Rather, **litigation of this matter will also require consideration of consent of both subscribers and customary users as to millions of calls spanning multiple years that were initiated under a variety of circumstances.** Just as Credit One's records establish some "wrong number" reports are false, the records establish that lack of consent at the time of one call will not necessarily reflect lack of consent at the time of a different call. **Accordingly, the Court finds that individual inquiries regarding consent will predominate over the common questions that can be litigated on a class-wide basis.**

*Id.*, *16-18 (emphasis added). The *Bridge* Court also recognized that phone numbers change hands over time, and so it would require individualized consent inquiries when seeing that a certain phone number received a call and said "wrong number" as to who the historic owner of that phone number was at the time of the call, to understand whether there was consent or not for the call. *Id.*, *17 ("This [reassignment] further establishes that determining consent will require individual inquiry for each subscriber of a mobile phone number.").

Indeed, for these same reasons, courts within the 11th Circuit have consistently denied class certification in wrong party and non-customer TCPA cases. *See Shamblin v. Obama for Am., DNC*, NO. 8:13-cv-2428-T-33TBM, 2015 WL 1909765, at *7 (M.D. Fla. April 27, 2017) (finding "[b]ased on the current record, the Court determines that there can never be common answers to the questions of whether (1) the telephone number dialed was assigned to a cellular telephone at the time of the call and (2) whether the subscriber consented to be called. There is no 'classwide' proof on these outcome-determinative issues."); *Hicks v. Client Serv'cs, Inc.*, NO. 07-61822-CIV, 2008 WL 5479111, at *8 (S.D. Fla. Dec. 11, 2008) ("Whether the burden is on the Plaintiff or the Defendant, ultimately consent is an issue that would have to be determined on an

individual basis at trial."); *Balthazor v. Central Credit Serv'cs, Inc.*, NO. 10-62435-CIV, 2012 WL 6725872, at *5 (S.D. Fla. Dec. 27, 2012) (same); *see also Newhart v. Quicken Loans, Inc.*, NO. 9:15-CV-81250, 2016 WL 7118998, at *5 (S.D. Fla. Oct. 13, 2016) (denying class certification finding "the class inquiry would fracture into mini-trials incompatible with class treatment."); *Fitzhenry v. ADT Corp.*, NO. 14-80180, 2014 WL 6663379, at *5-6 (S.D. Fla. Nov. 3, 2014).

Given the clear findings of the Nevada District Court regarding the viability of a TCPA class action against Credit One just like those classes now asserted by Plaintiff, it is clear that as a matter of law, Plaintiff has not described in her Complaint a viable class meeting the requirements of Rule 23.  Thus, her class allegations should be dismissed from the Complaint. *See, e.g., Pilgrim v. Universal Health*, 660 F.3d 943, 949 (6th Cir. 2011) (affirming motion to strike class allegations under Rule 23 standard); *In re Katrina Canal Breaches Litig.*, 401 Fed. App'x 884 (5th Cir. 2010) (granting motion to strike); *Vandenbrink*, 2012 WL 3156596, at *3 (granting motion to strike class allegations under Rule 23 standard, and finding "Since the individual factual inquiry will predominate this litigation, making any sort of class litigation highly impractical, the class allegations will be stricken.")  Credit One should not be forced to undergo extensive and unnecessary class discovery before reaching the same result.

### B. The Complaint Fails To State A Viable Claim For Injunctive Relief, and Injunctive Claims Should Be Dismissed Pursuant To 12(b)(1) and 12(b)(6).

Further, Plaintiff has failed to state a viable claim for injunctive relief, or to establish that she has standing to seek an injunction.  Article III of the Constitution

requires that a plaintiff seeking injunctive relief allege a real threat of future harm. "The Supreme Court has long held that to seek prospective or injunctive relief, plaintiffs (including individually named plaintiffs representing a class) must be able to demonstrate more than mere injury from past wrongs." *Veal v. Citrus World, Inc.*, Case No. 12–801, 2013 WL 120761, at *6 (N.D. Ala. Jan. 8, 2013); *see also O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects."). *See also Dapeer v. Neutrogena Corp.,* 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015) (dismissing claims for injunctive relief, and holding "Plaintiff lacks standing to seek injunctive relief because he fails to allege that he is threatened by repetition of the injury.").

Here, although Plaintiff alleges a past injury of telephone calls in March 2015 (*see* Compl., ¶¶ 20-22), she fails sufficiently to allege a threat of <u>future harm</u> to support her claim for injunctive relief.  Indeed, all that Plaintiff baldly alleges as to her injunctive claim is that "Plaintiff and class members are also entitled to, and does, seek injunctive relief prohibiting Defendants from violating the TCPA in the future." (Compl., ¶ 45), and that she could be called again regarding a Credit One account "now or when Plaintiff obtains additional telephone numbers in the future".  *See* Prayer for Relief, at (b) and (c). This concern of Plaintiff's is clearly speculative.

Because injunctions regulate future conduct, to have a viable injunctive relief claim, plaintiff must allege facts showing a real and immediate -- not just a hypothetical or conjectural -- threat of a demonstrable future injury. *Whitmore v. Arkansas*, 495 U.S.

149, 155 (1990) ("Allegations of possible future injury do not satisfy the requirements of Article III.  A threatened injury must be 'certainly impending' to constitute injury in fact.") (internal citation and quotation omitted); *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004) ("An injury in fact cannot be an abstract injury.").  Plaintiff makes no allegation (nor can she) that she has continued to receive calls related to a Credit One cardholder, or that she has even received such calls in the past year, or that she is actually changing her phone number to one that she has a factual reason to believe might receive calls regarding a Credit One account.  Certainly, she makes no allegation to support her request for specific injunctive relief that would involve future audits and reporting.  *See also Hughey v. JMS Dev. Corp*., 78 F.3d 1523, 1531 (11th Cir. 1996) (an injunction must be narrowly tailored to remedy only the specific harms shown by the plaintiffs, rather than to enjoin all possible breaches of the law).

Plaintiff thus lacks standing to seek injunctive relief and fails to state a viable claim and her claims for injunctive relief should be dismissed or stricken from the Complaint.

**C.     The Complaint Fails To State A Viable Basis For The Attorneys' Fees And Expenses of Litigation That Plaintiff Seeks, And Such Claims Should Be Dismissed/Stricken.**

The TCPA does not provide for an award of attorneys' fees or litigation expenses and instead provides for a maximum available amount of statutory damages.  *See*  47 U.S.C. § 227(b)(3).  While Plaintiff requests attorneys' fees and expenses of litigation in her Complaint (*see* Prayer for Relief, §(h)), Plaintiff provides no basis for why, if she was to succeed on her claim, she could recover anything more than her "costs" as defined by

Rule 41(d), which do not include attorneys' fees or litigation expenses other than those specified. *See, e.g., Esposito v. Piatrowski,* 223 F.3d 497, 501 (7th Cir. 2000) ("a party may recover reasonable attorneys' fees as part of its 'costs' under Rule 41(d) only where the underlying statute defines costs to include attorneys' fees"). Thus, her claim for attorneys' fees and expenses that are not provided for in the TCPA should be dismissed and/or stricken from the Complaint pursuant to Rule 12(b)(1), 12(b)(6), and/or 12(f).

**IV.    Alternatively, Plaintiff's Nationwide Class Claims Must Be Dismissed Because This Court Lacks Personal Jurisdiction Over Credit One As To The Claims Of Non-Florida Residents.**

Credit One does not dispute the Court's subject matter jurisdiction or claims brought under the TCPA under 28 U.S.C. § 1331. However, Credit One disputes the Court's jurisdiction to hear Plaintiff's claims brought on behalf of a putative nationwide class. If Plaintiff is deemed to have provided a sufficient description of a certifiable class under Rule 23, she nonetheless cannot establish this Court has jurisdiction to oversee the claims of non-Florida class members.

There are two variants of personal jurisdiction: general and specific (*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)), and here, neither exists for any non-Florida class members whom Plaintiff seeks to represent. Thus, her nationwide class claims should be dismissed, and she should be ordered to either amend her complaint to include only Florida persons in her class, or to bring her nationwide claims in a forum in which there would be general jurisdiction over Credit One.

### A.      There is no general jurisdiction over Credit One in Florida.

Courts have general jurisdiction over a foreign corporation only if the corporation's connections to the forum state "are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.*  Plaintiff makes no such claim— simply alleging in Paragraph 11 that Credit One "conducts business" in Florida. *See* Compl., ¶ 11. However, it is not enough to simply allege that a corporation has "continuous activity of some sorts within a state."  *Int'l Shoe Co.*, 326 U.S. at 318; *see also Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (declining to stretch the traditional limits of general jurisdiction, and noting "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] ... bases for general jurisdiction'").  *See also Henry A. v. Willden, No. 10-528,* 2014 WL 1809634 (D. Nev. May 7, 2014) (finding that Supreme Court in Daimler has clarified that "the reach of general jurisdiction is narrower than had been supposed in the lower courts for many years").

Here, the Complaint does not include a single allegation connecting the Bank generally to Florida beyond the assertion that Credit One "conducts business" in Florida. Comp., ¶ 11.[4]  And there could be no other allegation of general jurisdiction, given that

---

[4] On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the initial burden of "alleg[ing] sufficient facts to make out a prima facie case of jurisdiction" over the nonresident defendant. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir.1999) (per curiam). If the plaintiff sufficiently alleges a prima facie case of jurisdiction, the defendant must raise "through affidavits, documents or testimony, a meritorious challenge to personal jurisdiction." *Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009) (per curiam). "If the defendant does so, 'the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents.'" *Id.*

Credit One is headquartered in Las Vegas, Nevada, and has had its principal (and only) physical location in Las Vegas, Nevada since 2003. *See* Bouc. Decl. ¶¶ 3, 5-6. There are 657 Credit One employees in the Las Vegas, Nevada offices, whereas no Credit One employees reside in or are employed in Florida. *Id.*, ¶¶ 8-9. Credit One has no physical location in Florida, and neither owns nor leases property or real estate in Florida. *Id.,* ¶ 10. Further, Credit One is not required to be (and is not) registered to do business in Florida. *Id.*, ¶¶ 3, 11.

Clearly, Credit One is not "at home" in Florida. *See BNSF Ry. Co. v. Tyrrell*, —— U.S. ——, 137 S.Ct. 1549, 1558 (2017) ("The 'paradigm' forums in which a corporate defendant is 'at home,' ... are the corporation's place of incorporation and its principal place of business"). Thus, claims against Credit One cannot be asserted in this Florida federal court under a theory of general jurisdiction.

### B. There Is No Specific Jurisdiction In Florida As To Credit One For Class Members Residing Outside of Florida.

Because there is no general jurisdiction in Florida as to Credit One, Plaintiff must show there is specific personal jurisdiction for the claims she hopes to pursue on behalf of a putative nationwide class. *See Goodyear,* 564 U.S. at 919. Specific jurisdiction is warranted only when a claim "arises out of or relates to the defendant's contact with the forum." *Daimler*, 134 S. Ct. at 749. To establish specific jurisdiction, a plaintiff must allege that (i) defendant's activities are "purposefully directed" at the forum, (ii) plaintiffs' claims "arise out of or relate to at least one of those activities," and (iii) the assertion of jurisdiction "otherwise comport[s] with fair play and substantial justice."

*Goodyear*, 564 U.S. at 919. "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Meyers*, 137 S.Ct. at 1780.

Here, Credit One does not contest that as pled, Plaintiff's complaint (if read to give Plaintiff the benefit of all disputes) would establish specific jurisdiction in this Court ***over her own claims*** that as a Florida resident, she received calls in Florida that she claims violated the TCPA.[5]  However, in light of a recent Supreme Court decision, various district courts have been correctly finding that class-wide claims for ***non-residents*** of the forum state cannot piggyback on the named plaintiff's own specific jurisdictional claim.  *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017) (the "mere fact that other [resident] plaintiffs" took defendant's drugs in the state and sustained the same injuries as nonresident plaintiffs did not provide the required "connection between the forum and the specific claims at issue" for the Court to exercise jurisdiction over the nonresidents' claims against defendant).

Late last term, in *Bristol-Meyers*, the Supreme Court examined whether specific jurisdiction over *all* potential plaintiffs in an action could be established by the named plaintiff's *own* claims of specific jurisdiction in that forum and found that specific jurisdiction was lacking over non-resident plaintiffs whose "harms" occurred in their own

---

[5] Credit One disagrees with Plaintiff's assertions that the calls she received were placed with an Automated Telephone Dialing System ("ATDS") as restricted by the TCPA, or that the calls violated the TCPA, but as the truth of Plaintiff's claims are not at issue in this Motion, reserves its arguments as to its ultimate liability.

home states. *See Bristol-Myers*, 137 S. Ct. at 1781. There, 600 plaintiffs had filed claims in California state court against Bristol-Myers Squibb Company — a company incorporated in Delaware and headquartered in New York — asserting claims based on injuries allegedly caused by the pharmaceutical company's drug Plavix. *See Bristol-Myers*, 137 S. Ct. at 1777. Applying settled specific jurisdiction principles, the U.S. Supreme Court ultimately held that because the nonresidents were not prescribed, did not purchase, did not ingest, nor get injured by Plavix in California, there was no "connection between the forum and the specific claims at issue." *Id*. at 1781.

The Court explained that "[t]he mere fact that [some] plaintiffs were prescribed, obtained, and ingested Plavix in California — and allegedly sustained the same injuries as did the nonresidents — does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id*. In sum, in *Bristol-Meyerss*, the Supreme Court mandated that each plaintiff – whether a named representative or a putative class member – must establish personal jurisdiction regardless of whether it is established for another claimant in the action. And, in light of *Bristol-Meyerss*, various federal district courts have found that nationwide class claims like Plaintiff's here must be dismissed from a complaint when there is no viable claim of general or specific jurisdiction over non-resident class members' claims.

In *McDonnell v. Nature's Way Prod., LLC,* No. 16 C 5011, 2017 WL 4864910 (N.D. Ill. Oct. 26, 2017)*,* a putative class action alleging consumer fraud arising from defendant's energy supplements in which plaintiff sought to bring claims on behalf out-of-state putative members, the Northern District of Illinois expressly held that "[a]lthough

these individuals are not named plaintiffs, the analysis used in *Bristol-Myers Squibb Co.* is instructive in considering whether this Court has personal jurisdiction over the claims [plaintiff] asserts on their behalf ...." *Id.,* *4. Accordingly, the *McDonnell* court dismissed the portions of plaintiff's class action complaint that encompassed the claims on behalf of the out-of-state putative class members. *Id.*, *5.

Other courts have reached similar rulings.  For example, in *Spratley v. FCA US LLC*, 2017 U.S. Dist. LEXIS 147492 at * 18 (N.D.N.Y. September 12, 2017), in a putative class action  involving  alleged  safety defects on certain motor vehicles, the Court emphasized and relied upon *Bristol-Myers* to expressly reject "Plaintiffs' argu[ment] that the out-of-state Plaintiffs' claims need not arise from Chrysler's New York activities because the out-of-state Plaintiffs' claims are the same as the New York Plaintiffs' claims and arise out of Chrysler's nationwide activity ... [since] the Supreme Court recently rejected this very theory of personal jurisdiction."  *See also DeBernardis v. NBTY, Inc.,* No. 17 C 6125, 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018) (dismissing counts seeking to recover on behalf of out-of-state class members, noting "The Court believes that it is more likely than not based on the Supreme Court's comments about federalism that the courts will apply *Bristol-Myers Squibb* to outlaw nationwide class actions in a form, such as in this case, where there is no general jurisdiction over the Defendants.").  *See also Anderson v. Logitech, Inc.,* 2018 WL 1184729 (N.D. Ill. Mar. 7, 2018) (striking nationwide class claims).

Likewise, in *Wenokur v. AXA Equitable  Life Ins. Co.*, 2017 U.S. Dist. LEXIS 162812 at*  4, n. 4 (D. Arizona October 2, 2017), the Court specifically relied on Bristol-

Myers and held that "[t]he Court also notes that it lacks personal jurisdiction over the claims of putative class members with no connection to Arizona and therefore would not be able to certify a nationwide class."  And in a recent TCPA decision on a motion to certify a class against Cirque de Soleil for fax advertisements sent nationwide, the district court noted that the intervening decision of *Bristol-Meyers* meant that there was no specific jurisdiction (so as to establish personal jurisdiction) as to non-Illinois residents, and that the class certified must exclude all non-residents.  *Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc*., No. 14 C 2032, 2018 WL 1255021, at *18 (N.D. Ill. Mar. 12, 2018) ("Because these nonresidents' claims do not relate to defendants' contacts with Illinois, exercising specific personal jurisdiction over defendants with respect to them would violate defendants' due process rights. Thus, . . . the Court finds it appropriate to dismiss the claims of the non-Illinois-resident class members.").

In her opposition, Plaintiff will certainly point to other federal court decisions that split with the analysis detailed above, as opinions of the district courts are divided on how best to apply the guidance from *Bristol-Meyers*.  However, with no circuit court having weighed in on the issue, and given the clear logic of *Bristol-Meyers* and the persuasive reasoning of the decisions noted above, Credit One urges this Court to follow the example of the courts that have dismissed nationwide class claims brought on behalf of persons for whom this Court <u>does not have personal jurisdiction</u>.[6]  Credit One's minimal

---

[6] If her class claims meet Rule 23 standards, Plaintiff could in turn amend her complaint to assert her claims in Florida against Credit One on behalf of a class of Florida residents, or could alternatively bring her nationwide class lawsuit in the jurisdiction in which general jurisdiction exists over Credit One, which is Nevada.  *See, generally,* Bouc Decl., ¶¶ 5-11.

contacts with Florida related to calls to Plaintiff's cellular phone more than three years ago do not create specific jurisdiction here for the claims of all her putative nationwide class members.  It would make no sense (and would waste party and court resources) to go all the way through class certification before this Court would then dismiss non-resident class members' claims, which it would be required to do given the lack of specific jurisdiction. *See, e.g., Wenokur*, 2017 U.S. Dist. LEXIS 162812 at* 4, n. 4; *Practice Mgmt.,* 2018 WL 1255021, at *18.

Thus and at the least, Plaintiff's nationwide class claims should be dismissed and/or stricken from the Complaint.

## IV.    CONCLUSION

WHEREFORE, for the reasons detailed above, Credit One asks this Court to strike or dismiss with prejudice the classwide allegations as to it contained in Complaint Paragraphs 46-62, and further to dismiss or strike the claim for injunctive relief contained in Paragraph 63 and in the Prayer for Relief at (b) and (c), as well as the claim for attorneys' fees and "litigation expenses" contained in Prayer for Relief at (h).

Dated: May 14, 2018

Respectfully Submitted,

*/s/ Dayle M. Van Hoose*
Dayle M. Van Hoose, Esq.
Florida Bar No. 0016277
Ashley N. Rector, Esq.
Florida Bar No. 0106605
SESSIONS, FISHMAN, NATHAN & ISRAEL, LLC
3350 Buschwood Park Drive, Suite 195
Tampa, FL  33618

Telephone:(813) 890-2463
Facsimile: (866) 466-3140
dvanhoose@sessions.legal
arector@sessions.legal

*Attorneys for Defendant,*
*Credit One Bank, N.A.*

## CERTIFICATE OF SERVICE

I certify that on this 14th day of May 2018, a copy of the foregoing was filed electronically in the ECF system.  Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system, including plaintiff's counsel as described below.  Parties may access this filing through the Court's system.

Geoffrey E. Parmer, Esq.
The Consumer Protection Firm, PLLC
4030 Henderson Blvd.
Tampa, FL 33629

William P. Howard, Esq.
The Consumer Protection Firm, PLLC
4030 Henderson Blvd.
Tampa, FL 33629

Keith J. Keogh
Keogh Law, LTD
55 W. Monroe Street, Suite 3390
Chicago, IL 60603

Jacqueline Simms-Petredis
Burr & Forman, LLP
201 N. Franklin Street, Suite 3200
Tampa, FL 33602

*/s/ Dayle M. Van Hoose*
Attorney